## Rynn v. Rynn

*Thomas E. Doyle*, for libellant.

LAUB, J., March 27, 1948.—The libel in this case seeks to annul an unconsummated marriage celebrated between the parties January 7, 1944, in Jamestown, N. Y. The grounds upon which the annulment is sought are force, duress and fraud. These are valid grounds

for declaring a marriage a nullity in the State of New York; and the master, considering the lex loci contractus as governing, recommends the entry of a decree.

It is not necessary to enter into a discussion of the facts developed at the hearing since our attention is here directed to the legal question of jurisdiction.

In this Commonwealth an annulment cannot be granted unless the marriage was absolutely void in its inception: Divorce Law of May 2, 1929, P. L. 1237, sec. 12, as amended by the Act of July 15, 1935, P. L. 1013, 23 PS §12.[1] Therefore, if we were to grant the relief prayed for we would be declaring not only that libellant has made out a case on the facts, but that there was, in truth, no marriage at all: Commonwealth ex rel. Knode v. Knode, 149 Pa. Superior Ct. 563.

We may, however, only nullify this marriage in accordance with the law of New York.

"A decree of nullity from the beginning is not a dissolution of the marriage but is a judicial declaration that no marriage has ever existed. Therefore, in determining whether such a decree will be rendered, the court at the forum will be governed by the principles of the marriage law of the state which, . . . determines the validity of the marriage in question. Under the rule . . . a marriage is in most particulars governed by the law of the place of marriage; and if invalidity is claimed in one of these particulars the decree of nullity will be granted only upon the application of the principles of marriage law of that state . . .": A. L. I. Restatement of the Conflict of Laws §115, comment (b) to subsection (1).

---

[1] Section 15 of the act, as amended, states:

"Petitions or libels for the annulment of void or *voidable* marriages may be exhibited to the court of common pleas of the county where the marriage was contracted, or in the county where either the libellant or respondent resides, . . ."

This is a venue section only and has no application to jurisdiction. See 1 Freedman, Marriage and Divorce 856, for an able discussion on this point.

In Dodds v. P. M. & B. Railways Co., 107 Pa. Superior Ct. 20, the Superior Court was called upon to determine the validity of a California decree annulling a Mexican marriage. The decree had been entered upon the grounds of fraud. Fraud was not a ground for annulment in Mexico. In concluding that the California decree was improperly entered, the court said this (p. 26):

"The (re) marriage being valid in Mexico, where contracted, and its validity recognized everywhere, it seems to us the attempt to annul for any cause alleged to have existed at the time should be governed by the law of Mexico. If the cause alleged is not a sufficient cause under the law of Mexico, then other courts cannot assume jurisdiction to declare invalid ab initio a contract whose validity at the time is recognized when and where created, and everywhere. That marriage was a valid Mexican marriage, and is valid until annulled in accordance with Mexican law as to any matter existing at the time the marriage was contracted. . . .

"The California court has no jurisdiction, power or capacity to annul the Mexican marriage ab initio by virtue of the California statute."

It is true that marriages procured by fraud, force or duress may be annulled in the State of New York. However, such marriages are not considered void but voidable only, and the decree of annulment dates from the entry of the decree and not from the inception of the marriage as is the case in Pennsylvania: Domestic Relations Law, New York, art. 2, sec. 7, as amended: 14 McKinney Consolidated Laws of N. Y. §7, par. 4. In this respect the New York action differs but little from one in divorce although it is predicated upon matters occurring prior to marriage.

Voidable marriages under New York State law are considered valid until dissolved by annulment. In Matter of Biersack, 96 Misc. 161, 179, 159 N. Y. Supp.

519, 531, the court, speaking of the voidable marriages set forth in section 7 of the Domestic Relations Law, supra, said this:

"Section 7 has been given the settled meaning that the marriage which is voidable within its terms is void only when so pronounced by judgment. *Stokes v. Stokes*, 198 N. Y. 301; *Matter of McKinley*, 66 Misc. Rep. 126.

"It follows that in the meantime such marriage is as good as any marriage can be, . . . "

We are constrained by our own law to recognize the present union as absolutely valid in every respect. "There is no question as to the general rule that a marriage which is valid by the law of the place where it is solemnized is valid everywhere": Stull's Estate, 183 Pa. 625, 630.

It therefore appears that we might, if we properly apply the facts, enter a decree annulling a foreign marriage which was void from the beginning, but we see no authority under our law for the entry of a decree which is effective only from its date.

"In Pennsylvania the jurisdiction of the courts of common pleas upon the subject of divorce, and in relation to the power to declare a marriage null and void, is purely statutory, both as to the form and the substance of the action": Howard v. Lewis, 6 Phila. 50, cited with approval in Pitcairn v. Pitcairn, 201 Pa. 368. See also Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30, 33.

A decree in this case, made in pursuance of our jurisdictional authority, would effect an entirely different result from that contemplated by New York law. We would be saying that no marriage was ever contracted. New York, under the same circumstances, would declare that there was a marriage ab initio but that it ceased to exist as of the date of its decree. In consideration of those cases where children are born or conceived in the interim between the marriage ceremony

and the court action, the importance of the distinction becomes at once apparent. Under our law such children would be bastards: Eisenberg v. Eisenberg, supra, p. 34. In New York they would be legitimate: In re Biersack, supra.

There seems to be some authority to the effect that marriages obtained by fraud, force or duress were absolutely void at common law and hence remain so in Pennsylvania: Walter's Appeal, 70 Pa. 392. In view of the fact that these grounds are now made the subject of divorce in this State, the matter is at least open to question. But whether they are void or not is not material to this issue since here we would apply New York law and not our own.

We need only to add that since this matter came on for argument, libellant has asserted a new ground for annulment. This ground, which was not pleaded in the libel, is that the marriage was void ab initio because it was performed by a justice of the peace.

Under paragraph 5 of section 11 of the Domestic Relations Law of New York, a marriage between persons under the age of 21 years cannot be solemnized by a justice of the peace, although said officers have the power to perform marriages generally. This general power is conferred by paragraph 3 of the same section of the law.

Because of the provisions of paragraph 5, supra, libellant now contends that her marriage was absolutely void and that therefore our decree, if entered, can properly be dated as of the marriage ritual. In this she is somewhat supported by the decision in Caplan v. Caplan, 164 Misc. 379, 300 N. Y. Supp. 43, which states (p. 381):

"Reading section 11 of the Domestic Relations Law as a whole, it is apparent that no marriage is valid unless solemnized in the manner therein prescribed.

"The purported marriage of the parties herein was not performed in accordance with the provisions of

that section. It follows that it was no marriage at all, and the plaintiff is entitled to a judicial declaration thereof."

The case of De Martino v. De Martino, 46 N. Y. S. (2d) 620, is even stronger than the Caplan case, for it states categorically that a ceremony between infants performed by a justice of the peace is absolutely void.

There is, however, competent authority to the contrary. Andrews v. Andrews, 166 Misc. 297, 1 N. Y. S. (2d) 760, was a case based upon a marriage between infants celebrated before a city judge, an officer not included among those authorized to perform such marriage in paragraph 5 of section 11, supra. There the court held that section 11 is a prohibition upon the officer and does not affect the validity of the marriage. Likewise, in Graves v. Graves, 52 N. Y. S. (2d) 622, where the marriage in question was performed by a justice of the peace, it was held that a decree of annulment would not be entered merely because one of the parties was under 21. It was there concluded that paragraph 5 of section 11 of the Domestic Relations Law was directory only and not intended to affect the relationship between the parties. This case, as well as that of De Martino v. De Martino, supra, recognizes the existence of an opinion by the Attorney General of New York holding that such marriages are not void.

It therefore appears that a reasonably sharp conflict exists among the courts of our sister State as to whether or not a justice of the peace can celebrate a marriage between parties when one or both of them are under 21 years. Fortunately, however, we are not forced to make a choice between precedents because we are convinced that whether such marriages are valid or not, the New York law, in the event of annulment, would enter a decree as of the date of judgment and not of the marriage. Under section 7, par. 1, of the Domestic Relations Law of New York, it is specifically

provided that a marriage is void from the time its nullity is declared by the court if either party thereto "1. Is under the age of legal consent, which is eighteen years, . . ." This, it seems to us, encompasses any case where the material question involves the age of the contracting parties. True, in the instant problem, the right of the justice of the peace to perform the ceremony is also involved but this is only incidental since it must be conceded that where the parties are sui juris his power to perform a ceremonial marriage could not be questioned.

We also have before us the case of Anonymous v. Anonymous, 176 Misc. 850, 29 N. Y. S. (2d) 331, which involved an entirely different section of the Domestic Relations Law of New York. That case involved the egregious situation where a fifteen and a half year old boy married an eighteen year old girl. Section 15(a) of the above law absolutely prohibits the marriage of a boy under the age of 16 but does not declare such marriage void. There, in a support action, the court refused to treat the marriage as void but considered it as voidable only. The basis for the decision was section 7, par. 1, supra, and also sections 5 and 6 of the act. These latter two sections declare categorically which marriages shall be declared void; the type of marriage which obtains here and which obtained in the Anonymous case is not one of them.

It therefore appears that even though a New York court might declare a marriage such as was had here to be void, it would have to follow the mandate of section 7 and make its decree effective from the date of its entry. This being the case, the new approach of present libellant would effect no change in our conclusions. Since we have no jurisdiction the libel must be dismissed.

And now, to wit, March 27, 1948, the libel is dismissed at libellant's cost.