## Forry v. Forry

*Edwin Krawitz*, for plaintiff.

DAVIS, P. J., March 13, 1967.—This is an action to annul a marriage, instituted on August 28, 1965, under section 12 of the Divorce Law of May 2, 1929, P. L. 1237, as amended by the Act of July 15, 1935, P. L. 1013, 23 PS §12. It has been brought by Donna M. Forry, nee Sabinsky, by Jean M. Sabinsky, her parent and natural guardian, against Frank W. Forry, a minor. At the time of their marriage, March 12, 1965, both parties were Pennsylvania residents. Plaintiff, born September 18, 1949, was then 15 years, 5 months and 24 days of age; defendant, born June 21, 1948, was 16 years, 8 months and 22 days old. The parties obtained a marriage license from the city clerk of Port Jervis, New York, upon an application in which they misrepresented that their respective ages were 18 and 21. They neither sought nor obtained parental consent or judicial approval. The marriage was celebrated before the acting mayor of

Port Jervis. After the ceremony, they returned to Pennsylvania and resided together for three months with defendant's parents in East Stroudsburg. During that period, plaintiff left defendant on three occasions. The last time, she did not return to defendant but resumed residence with her parents in Stroudsburg. No children have been born of this union and none are expected. The sole ground upon which annulment is sought is that plaintiff had not yet attained the age of consent at the time when the marriage was celebrated. The master appointed by the court held a hearing, received testimony establishing the foregoing facts and filed a report recommending that the marriage be annulled.

Almost 26 years ago, this court was presented with a case closely analogous to the instant proceeding: Werkheiser v. Werkheiser, May term, 1941, no. 43. There, two young Pennsylvania residents had driven to Elkton, Maryland, to get married. The Maryland statute required the male applicant to be 21 years of age and the female to be 18. Although the young man was only 18 years old and the young woman 17, they obtained a license by misrepresenting their ages and were married. After the ceremony, they returned to the homes of their respective parents in Pennsylvania. They never cohabited as husband and wife; but the marriage was consummated by coition and one child was born of the union. Subsequently, the wife sought an annulment on the ground of nonage, under section 12 of the Act of July 15, 1935, P. L. 1013, 23 PS §12. The master recommended that the libel be dismissed for the reasons that the marriage was, at the most, voidable, and that the statute provided only for the annulment of such marriages as were absolutely void. Although the docket does not reveal the entry of a decree based on this recommendation, an excerpt from the master's report was officially

printed and may be found under the caption, Werkheiser v. Werkheiser, 4 Monroe 69. We will examine the instant case to determine whether subsequqent legal developments require a different conclusion here.

It is well established that the validity of a marriage contract is governed by the law of the place where the contract was made: Jewett v. Jewett, 196 Pa. Superior Ct. 305, 175 A. 2d 141 (1961); Starace v. Celebrezze, 233 F. Supp. 452 (W. D., Pa. 1964). Subject to exceptions not here relevant (see, for example, Stull's Estate, 183 Pa. 625, 39 Atl. 16 (1898)), the Pennsylvania courts will recognize a marriage celebrated between Pennsylvania residents in another State if the marriage is valid under the law of that State: Lannamann v. Lannamann, 171 Pa. Superior Ct. 147, 89 A. 2d 897 (1952). The statute governing the validity of the marriage in the instant proceeding is found in the Domestic Relations Law, McKinney's Consolidated Laws of New York Annotated:

"Section 7. *Voidable marriages*

"A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto:

"1. Is under the age of legal consent, which is eighteen years, provided that such nonage shall not of itself constitute an absolute right to the anulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage; . . . L. 1909, c. 19; amended L. 1922, c. 279, sec. 2; L. 1922, c. 313; L. 1924, c. 165; L. 1928, c. 589; L. 1929, c. 537; L. 1945, c. 686; L. 1948, c. 362; L. 1958, c. 804; L. 1962, c. 313, sec. 1, effective Sept. 1, 1963".

With relation to procedure, the Law provides:

"Section 140. *Action for judgment declaring nullity of void marriages or annulling voidable marriages.*

\* \* \* \* \*

"(b) Party under age of consent. An action to annul a marriage on the ground that one or both parties had not attained the age of legal consent may be maintained by the infant, or by either parent of the infant, or by the guardian of the infant's person; or the court may allow the action to be maintained by any person as the next friend of the infant. But a marriage shall not be anulled under this subdivision at the suit of a party who was of the age of legal consent when it was contracted, or by a party who for any time after he or she attained that age freely cohabited with the other party as husband or wife. . . . Added L. 1962, c. 313, sec. 6; amended L. 1963, c. 458, both effective Sept. 1, 1963".

With relation to the issuance of marriage licenses, the law provides:

"Section 15. *Duty of town and city clerks*

\*  \*  \*  \*  \*

"2. . . . If it shall appear upon an application of the applicants . . . or upon information required by the clerk that the man is under twenty-one years of age and is not under sixteen years of age, or that the woman is under the age of eighteen years and is not under fourteen years of age, then the town or city clerk before he shall issue a license shall require the written consent to the marriage from both parents of the minor or minors or such as shall then be living, or if the parents of both are dead, then the written consent of the guardian or guardians of such minor or minors. . . .

"3. If it shall appear upon an application for marriage license that the woman is under the age of sixteen years and is not under fourteen years of age, the town or city clerk shall require, in addition to the consent provided in this section, the written approval and consent of a judge of the family court, having

jurisdiction over the town or city in which the application is made, to be attached to or endorsed upon the application, before the license is issued. . . . L. 1909, c. 19; amended L. 1912, c. 241; L. 1917, c. 503; L. 1921, c. 317, sec. 1; L. 1926, c. 635, sec. 3; L. 1927, c. 547, sec. 2; L. 1929, c. 633; L. 1931, c. 511; L. 1932, c. 285; L. 1935, c. 535, sec. 4; L. 1937, c. 706; L. 1938, c. 640, sec. 5; L. 1939, c. 110, sec. 4; L. 1960, c. 1026; L. 1962, c. 689, sec. 14; L. 1964, c. 168, effective March 23, 1964; L. 1965, c. 102, effective Sept. 1, 1965; L. 1965, c. 142, effective May 11, 1965".

"Section 15-a. *Marriages of minors under sixteen years of age*

"Any marriage in which the man is under the age of sixteen years or in which the woman is under the age of fourteen years is hereby prohibited. Any town or city clerk who shall knowingly issue a marriage license to any man actually under the age of sixteen years or to any woman actually under the age of fourteen years, shall be guilty of a misdemeanor and on conviction thereof shall be fined in the sum of one hundred dollars for each and every offense. Added L. 1926, c. 590, sec. 2; amended L. 1927, c. 547, sec. 3; L. 1928, c. 43, effective Feb. 15, 1928".

The legal effect of section 15-a, last quoted, is to render a marriage contracted in violation thereof not void but merely voidable; Anonymous v. Anonymous, 176 N. Y. Misc. 850, 29 N. Y. S. 2d 331 (Domestic Relations Ct. of City of New York, 1941). Indeed, where the fundamental validity of a marriage is the issue, the New York courts attribute paramount authority to section 7. For example, in Matturro v. Matturro, 111 N. Y. S. 2d 533, 536 (Supreme Ct., Westchester Co., 1952), a 15-year-old plaintiff had married without the written consent of her parents or the approval of the Children's Court judge, specified by the Domestic Relations Law, sec. 15, paragraph 3. The

trial court had dismissed her complaint in divorce on the ground that the marriage was void ab initio. She applied for an order requiring the defendant to pay her expenses in prosecuting an appeal. The court, after concluding that the appeal was meritorious (as in fact it proved to be: Matturro v. Matturro, 281 App. Div. 695, 117 N. Y. S. 2d 523 (Supreme Ct., App. Div., 2d Dept., 1952)), granted the order and Justice Flannery said:

". . . At common law the marriage would have been valid without the consent of parents or approval and order of the Court. Bennett v. Smith, 21 Barb. 439. The invalidity of the marriage here, then, must be found somewhere in the statutes. The only provisions of the Domestic Relations Law which absolutely void a marriage are those contained in Sections 5, 6 and 11 of that law. Section 5 makes incestuous marriages absolutely void. Section 6 makes marriages by one whose husband or wife by a former marriage is living absolutely void, with certain exceptions not here pertinent. Section 11 provides for the invalidity of a marriage not solemnized as there required. The provisions of section 7 refer entirely to what are known as 'voidable marriages,' which are valid until they are anulled by a Court of competent jurisdiction.

"It has been held that the provisions of Domestic Relations Law, Section 15, do not modify nor affect the provisions of Section 7 and are subordinate to them. Kruger v. Kruger, 137 App. Div. 289, 122 N. Y. S. 23. It has even been held that the somewhat ambiguous provision of the first sentence of Domestic Relations Law, Section 15-a, does not void a marriage of a man under sixteen absolutely, but merely renders it voidable. Anonymous v. Anonymous, 176 Misc. 850, 29 N. Y. S. 2d 331. The marriage there was performed apparently on a license obtained by fraudulent statement of age but it does not appear whether it was or

was not with the consent of the minor's parent. A similar rule was declared in Re Kemp, 192 Misc. 267, 78 N. Y. S. 2d 588, where a license was also obtained on a false statement of age but apparently with the consent of the minor's mother. *There is no other express or affirmative provision that could possibly be interpreted to make a ceremonial marriage absolutely void from its inception".* (Italics supplied.)

The early form of section 7 had permitted marriages to be declared void on the simple ground that either of the parties were under the 18 year age of consent. It was amended, however, by Law 1922, c. 313, sec. 1, which made this important addition:

"Provided that such nonage shall not of itself constitute an absolute right to the annulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage".

Effect to this amendment was given by the court in Foley v. Foley, 122 N. Y. Misc. 663, 203 N. Y. S. 674, 676, (Supreme Ct., Oswego Co., 1924) and Judge Cheney explained the rationale by which he was persuaded there to exercise the court's discretion in favor of granting an annulment:

"In this case both contracting parties are very young, the boy 17 years old and the girl 15; they are of different religions; they have not had much education, the boy having attended grammar school only, and the girl just commencing high school work. While no criticism is made of the boy's character, he has no financial ability, he has no trade, and is working practically as a laborer in a shop, where his earnings are small.

"Under all the circumstances, it would seem that the interests of both these persons, and that of the public as well, would be best served by avoiding this

foolish act committed by them and annuling the marriage".

The discretionary principle has been followed in subsequent decisions: Smith v. Smith, 129 N. Y. Misc. 503, 221 N. Y. S. 672 (Supreme Ct., Equity Term, Onondaga Co., 1927)—annulment denied; Retan v. Mathewson, 131 N. Y. Misc. 106, 226 N. Y. S. 80 (Supreme Ct., Onondaga Co., 1927)—annulment granted; Short v. Hotaling, 225 N. Y. S. 2d 53 (Supreme Ct., Special Term, Kings Co., Part V, 1962)—annulment denied.

Section 12 of the Pennsylvania Divorce Law Act of May 2, 1929, P. L. 1237, amended by the Act of July 15, 1935, P. L. 1013, 23 PS §12, under which the instant action has been brought, makes no provision whatsoever for the annulment of a marriage which is merely voidable and not absolutely void. It reads:

"Section 12. *Annulment of Void Marriages*

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony".

In Lannamann v. Lannamann, 171 Pa. Superior Ct. 147, 89 A. 2d 897 (1952), the Superior Court affirmed an order denying the annulment of a marriage entered into in Maryland by a Pennsylvania resident who was 18 years of age at the time of marriage, which was permissible by the law of Maryland. The sole ground relied upon by plaintiff was that the marriage had been entered into "in jest". The court held that the

marriage was not "in jest", was not void ab initio, and, therefore, was not subject to annulment under section 12. In a more recent case, Jewett v. Jewett, supra, at pages 307, 308, the complaint contained two counts: (1) for divorce, and (2) for annulment. The parties were married at Elkton, Maryland, when plaintiff was a minor incapable of marrying under the laws of Maryland without his parent's consent. It was alleged that defendant fraudulently misrepresented plaintiff's age to the license clerk, and misrepresented to plaintiff that he was the father of a child born to defendant, when in fact no child was born. The lower court sustained a demurrer to the second count. On appeal, this disposition was affirmed and Judge Montgomery said:

"It is to be noted that the Act applied only to marriages which are absolutely void and our courts have determined only five grounds for which annulment will be granted: bigamy; insanity; minority under seven years; subsequent marriage to a paramour after a divorce on the ground of adultery; and marriage entered into in jest or play. Although there are no cases in either jurisdiction exactly on point, under unanimous common law authority, a marriage contract by a minor above seven years is voidable, not void, both in Maryland and Pennsylvania. 35 Am. Jur., Marriage, section 103; Sum. Pa. Jur., Domestic Relations, section 20; 55 C. J. S., Marriage, section 11. Also see Lannamann v. Lannamann, 171 Pa. Superior Ct. 147, 89 A. 2d 897.

"Therefore the allegations in the present case do not constitute ground for annulment in Maryland or Pennsylvania. In Maryland the proper cause of action would be a complaint in Equity to set aside the marriage, but the marriage would not be void ab initio or absolutely void as required by our statute".

Our lower courts have recognized the absence of any statutory provision permitting the annulment of marriages on the ground of nonage of the parties. Accordingly, President Judge Fuller, in 1925, was moved to entertain a bill in equity to annul a marriage in which the wife had been only 17 years old at the time, and the license to marry had been obtained by fraudulently misrepresenting her correct age: Hullahan v. Paritz, 24 Luz. 182 (C. P. Luzerne Co., 1925). In three subsequent cases, the bill in equity was invoked for relief on this ground: unsuccessfully in Greene v. Brandt, 13 D. & C. 712, (C. P. Luzerne Co., 1930); successfully in Penza v. Tanno, 15 D. & C. 79, 26 Luz. 83 (C. P. Luzerne Co., 1930), and Porter v. Cook, 31 Del. Co. 277 (C. P. Delaware Co., 1932). None of these decisions was the subject of appellate review; but, in Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30 (1932), Judge, later President Judge, Baldrige demonstrated in a scholarly opinion that the Pennsylvania courts of equity have no jurisdiction to annul marriages. An additional procedure was tested successfully in Travis v. Travis, 19 D. & C. 505 (C. P. Greene Co., 1932). There, the parties were Pennsylvania residents who travelled to Wellsburg, West Virginia, to get married. Defendant husband was under the age of consent specified by West Virginia law; but the parties obtained a license after misrepresenting their correct ages to the clerk. After their return to Pennsylvania, wife plaintiff sued for annulment, invoking the Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq. The court granted an annulment. Since that time, section 6 of the act has been amended by section 1 of the Act of April 25, 1935, P. L. 72, which forbids the entry of a declaratory judgment in any case where a divorce or annulment of marriage is sought.

In the light of the foregoing authorities, it is clear that plaintiff's complaint must be dismissed.

ORDER

And now, March 13, 1967, the complaint of Donna M. Forry (minor), by Jean Sabinsky, her parent and natural guardian, plaintiff, against Frank W. Forry (minor), defendant, is hereby dismissed.